## Commonwealth v. Yorktowne Paper Mills, Inc.

*Edward T. Baker*, Deputy Attorney General, for Commonwealth.

*W. William Anderson*, for appellant.

HERMAN, J., November 4, 1963.—This is an appeal from a decision of the Board of Finance and Revenue denying appellant's petition for a refund of payment of sales and use taxes for the period from March 7, 1956, to and including May 31, 1959.

Appellant, Yorktowne Paper Mills, Inc., is a domestic corporation engaged in the manufacture of paper and allied products in York, Pa. During the period in question it purchased for use in its boilers A-Gel and Remox, the former a coagulating aid and the latter a softening agent. It also purchased Du-Jet, a cleaning agent. In the same period, the company purchased lumber and nails for the construction of pallets to be attached to the finished manufactured product when delivered to the purchasers. All of these articles were used by the company in the course of its activities.

.

During this same period, the company rented certain machinery.

After an audit on August 31, 1959, an assessment was made against the company for a sales and use tax on these purchases and rentals in the amount of $1,587.20, which, with additions of $193.78, and interest of $203.04, made a total assessment of $1,948.02. The company paid the sum of $1,948.02 and then duly filed a petition for refund of this amount. After appropriate action by the Sales Tax Board, the matter was appealed to the Board of Finance and Revenue, which, by an order dated June 2, 1961, sustained the said Sales Tax Board and refused the prayer of the petition. On August 2, 1961, the company appealed to this court.

In its appeal and specification of objections, the company avers that A-Gel, Remox and Du-Jet are supplies; that the rental of a crane is equipment used or consumed directly in its operations of manufacturing paper and allied products and that the lumber and nails which were made into pallets were used to transport the company's products. The company further avers that the tax assessed against it for truck rentals should have been assessed against the lessor and not against it.

The parties agreed in writing, pursuant to the Act of April 22, 1874, P. L. 109, 12 PS §688, to try this case without a jury and on January 7, 1963, stipulated the facts. We find the facts as the parties stipulated them and will refer to such of them as we believe necessary to a better understanding of this opinion.

Approximately one month after the case was tried by the filing of the stipulation of facts, and 18 months after the appeal was filed, the Commonwealth filed a motion to quash on the ground that the appeal was not timely taken. Our first consideration, therefore, must be whether the motion to quash should be sustained. We conclude that it should not. The record is not at all clear that the appeal was not *timely* taken.

The pertinent provisions of the law relating to ap-

peals from action of the Board of Finance and Revenue are section 555 of the Selective Sales and Use Tax Act of March 6, 1956, P. L. (1955) 1228, as amended, 72 PS §3403-555, and section 1104 of The Fiscal Code of April 9, 1929, P. L. 343, as amended, 72 PS §1104. The former provides, in pertinent part: "Any person . . . aggrieved by the decision of the Board of Finance and Revenue under section 554 [the section providing for action by the Board of Finance and Revenue in cases such as the instant case] . . . may within sixty days, appeal to the court of common pleas of Dauphin County from the decision of the board . . . in the manner now or hereafter provided for by law for appeals in the case of tax settlements"; and the latter, as far as material here, follows:

"Any person, . . . aggrieved by the decision of the Board of Finance and Revenue, . . . may, within sixty (60) days, appeal to the court of common pleas of Dauphin County from the decision of the Board . . . [in a manner now or hereafter provided by law for appeals in the case of tax settlements] . . . The said sixty (60) day period shall begin to run: . . . (b) from the *date of mailing* of notice of the refusal of the petition for review, . . ." (Italics supplied.)

As we view this record, we find that it is only paragraph 11 of the stipulation that has any reference to the action of the Board of Finance and Revenue.

"11. The Board of Finance and Revenue, by its order *dated* June 2, 1961, refused to set aside and overrule the action of the Sales Tax Board. This order was appealed to the Court of Common Pleas of Dauphin County, Pennsylvania, on August 2, 1961."

Contrary to the Commonwealth's argument in its brief, this paragraph makes no reference to when the order was *mailed* to appellant, and there is nothing in the record proper to enlighten us. It is true that typed on the bottom of the order of the board is a notation that a copy was mailed to counsel for appellant on June

128

2, 1961, but the photostatic copy of such order attached to the stipulation as exhibit D, concerning which the stipulation made no reference, is hardly evidence that the order was actually mailed on that date. Since, as we find, there is no evidence of the mailing date, we cannot conclude that the appeal was made too late and, therefore, the motion to quash must be refused. If we were to assume that it was one day late, however, we would still be inclined to overrule the motion to quash for the reason that the said motion itself was made too late and at a time when the issues had been duly tried by the filing of the stipulation of facts. Although there is a substantial body of law in this Commonwealth holding that when an appeal is filed late, the appellate court lacks jurisdiction to hear the matter and must quash the appeal: Fenerty Disbarment Case, 356 Pa. 614 (1947); Yeager v. United Natural Gas Co., 197 Pa. Superior Ct. 25 (1961); W. W. Grainger, Inc. v. Ruth, 192 Pa. Superior Ct. 446 (1960); Department of Highways v. Pennsylvania Public Utility Commission, 189 Pa. Superior Ct. 111 (1959); Commonwealth v. Wynn, 175 Pa. Superior Ct. 546 (1954); Von Kaenel Unemployment Compensation Case, 163 Pa. Superior Ct. 173 (1948); Higgins v. The Educators, 147 Pa. Superior Ct. 400 (1942); there is also authority holding that even though the appeal is late, the party with the right to complain can lose that right by laches if the court would otherwise have jurisdiction. See The Delaware & Hudson Canal Co. v. Loftus, 71 Pa. 418 (1873); Mayes v. Jacoby, 8 S. & R. 526 (1822); Commonwealth v. Crum Lynne Iron & Steel Co., 27 Pa. Superior Ct. 508 (1905); and Commonwealth v. City National Bank, Philadelphia, 50 Dauph. 147 (1941). In the City National Bank case, Judge Richards, then President Judge of the Orphans' Court of Dauphin County, specially presiding, discussed the earlier Supreme and Superior Court cases and concluded that the laches of the Commonwealth was sufficient to amount to a waiver

of the defects in an appeal to this court from a decision of the Board of Finance and Revenue.

We now consider the merits of this appeal. By stipulation dated March 18, 1963, and made a part of the record, appellant withdrew its objection to the constitutionality of the tax assessment. The remaining objections may be considered in three categories: (1) The taxability of the use of A-Gel, Remox and Du-Jet; (2) the taxability of the use of lumber and nails for pallets and (3) the taxability of truck and crane rentals and of miscellaneous minor items.

The Commonwealth concedes that appellant is engaged in manufacturing when it "produces paperboard from scrap paper by dissolving the scrap paper in water and then gradually draining out the water until what remains is the product in sheet form". It is stipulated that, "At the initial stage of the process the scrap paper is dumped into hot water and crushed into small bits by an item of equipment known as a beater. From the beater the water containing the dissolved scrap paper flows along a trough and onto a felt which acts as a conveyor belt and carries the liquid paper through the wet end of the paper machine. When the liquid paper first flows onto the felt it consists of approximately 60 percent water. Then as it is carried through the wet end of the machine the water gradually drains out through the felt until the paper is dry enough and strong enough to continue through the machine by itself. Then it leaves the felt and is dried by steam as it proceeds through the dry end of the machine to the finishing room where it is cut into sheets or wound onto rolls.

"Steam is used in the manufacturing process to dry the paper, to heat the water in the beater to a temperature of 140 degrees (Fahrenheit), and to run the turbine which operates the machine."

As previously stated herein, A-Gel is a coagulating aid and Remox is a softening agent, both of which are

used continuously in appellant's boilers to eliminate scale and corrosion, thus prolonging the life of the boilers and keeping them in operating condition. The boilers themselves perform no function but to produce steam, which is directly used in the manufacturing process, and it would appear that they are not only used solely in manufacturing but that they are used practically continuously during the manufacturing process.

The Selective Sales and Use Tax Act of March 6, 1956, P. L. (1955) 1228, as variously amended, 72 PS §3403-1, et seq. (hereinafter referred to as the "act"), imposes a tax upon the use of certain tangible personal property, but in defining the term "use," there appears the following exception:

" 'Use' . . . shall not include, . . . consumption of tangible personal property including, but not limited to machinery and equipment and parts *and foundations* therefor, and supplies directly in *any of the operations of:*

"(i) The manufacture of p e r s o n a l property"; amendment of April 5, 1957, P. L. 34.

This section then goes on to further limit this exception by providing in pertinent part:

*"The exclusions provided . . . shall not apply to tangible personal property to be used or consumed in managerial sales or other non-operation activities."*[1]

The Commonwealth argues that A-Gel and Remox are not *directly* used in the manufacturing process and, therefore, their use does not come within the exception. Appellant argues that they are *directly* used in manufacture and that their use is almost identical to the use of lubricants in manufacturing machinery, which, by

---

[1] For the first year of the three-year period here under consideration, there was included in the law a further restriction which was not commented upon by counsel on either side and which, because the case involves taxes for more than a three-year period lumped together, cannot now be considered.

a regulation of the Department of Revenue, is exempt.

The Commonwealth cites two opinions of this court where it believes the word "directly" as used in the Selective Sales and Use Tax Act was construed to support the position it takes in the instant case: Commonwealth v. McHugh, 75 Dauph. 68 (1960), and Commonwealth v. Equitable Gas Co., 80 Dauph. 89 (1963). A careful reading of these cases will reveal that they did not turn on the construction of the word "directly". In the McHugh case the question was on the taxability of the use of raw materials constructed into an addition to the water supply system of Philadelphia and the then President Judge Neely, speaking for this court, properly held that the use there was not "directly . . . in the operation of rendering a public utility service". While he speaks of "directly" as distinguished from "indirectly", or "incidentally", it is clear that his reasoning is that these materials, until the new pipeline was actually completed and put into operation, were not used by the contractor directly or indirectly in the "operation of rendering a public utility service." This case was reversed on other grounds in an opinion reported in 406 Pa. 566 (1962).

In the Equitable Gas Co. case, where the writer of this opinion was speaking for the Dauphin County Court, it was pointed out that, in the judgment of the court, gas and electric meters were measuring devices and so were not used directly in the "producing, delivery or rendering of a public utility service." While reference was there made to the McHugh case and to the definition there found of the word "directly", we think it is clear that the case turned on the fact that the meters were not used either directly or indirectly in the producing, delivery or rendering of a public utility service which are the activities excluded from tax.

Appellant points to regulation 225, the "manufacturer's regulation" of the Department of Revenue, adopted and promulgated by virtue of section 580 of

the act. This regulation provides, in part, that, among other things, there are three basic requirements which must be met before the use of tangible personal property may qualify for this exemption. These are: (1) That the taxpayer must be engaged in manufacturing, which is here conceded; (2) that he purchase the property for use directly in the manufacturing operation and (3) that the property be predominately used in said operation, and there is no doubt that the properties here involved are used entirely in the one operation hereinbefore described. The question then is: Was the property purchased for use directly in the manufacturing operation?

The manufacturer's regulation goes on to say that in determining whether the property is so used directly, consideration must be given to:

"a. The physical proximity of the property, while in use, to the production process;

"b. The proximity of the time of use of the property to the production process; and,

"c. The active causal relationship between the use of the property and the production of a manufactured product. In order to meet the direct use test, it is essential that the taxpayer establish such active causal relationship.

"The fact that property is essential to the conduct of a manufacturer's business, either because its use is required by law or is a matter of reasonable practicality, does not of itself mean that the property is 'used directly' in manufacturing. On the other hand, the fact that a product conceivably could not be produced in some manner which does not involve use of the property, is not conclusive that the property in question is not 'used directly' in operational activities of manufacturing."

Under this regulation, it has been held by the taxing authorities that in the production of paper, which is manufacturing, the drying of the pulp is a *direct* manu-

facturing activity: 2 CCH 1961 State Tax Rep., paragraph 60-210. In the instant case, the steam from the boilers is used directly, among other things, to dry the pulp. Under this regulation, it has also been held that "operating supplies which are actively and continuously used in the operation of exempt machinery and equipment (Examples: fuel, lubricants, compressed air, etc.), are exempt from tax": CCH, ibid. 1962.

It seems to us that A-Gel and Remox are essential to the conduct of this business, even though the product could conceivably be produced without them, and that they are in close physical proximity and close time proximity to the production process; and that there is an active causal connection between their use and the manufacturing process.

What we have said concerning these two chemicals is equally true of Du-Jet, the cleaning agent, which is used on the felt conveyor belt. It is stipulated that, "As the liquid paper is carried by the belt through the wet end of the paper machine, the water drains through the felt and is used again. The felt must be physically clear and free from any foreign material that would adversely affect the drainage of the water through it. Otherwise foreign material would get into the paper causing it to break and resulting in a breakdown of the production process. Du-Jet is used to eliminate foreign material from the felt and to maintain the clear condition to the felt. . . ."

It seems to us that the use of Du-Jet here is practically identical to the use of "fuel, lubricants, compressed air, etc.," which we saw was exempt under the regulation. Its use is also practically identical to the use of hydraulic fluid and cleaning and degreasing solutions, which were held to be exempt by the Sales Tax Board: 3 CCH 1961 State Tax Rep., paragraph 250-656.

We conclude, therefore, that the use of A-Gel, Remox

and Du-Jet by appellant here is not taxable under the act.

We turn now to the use of lumber and nails for the construction of pallets and skids. It was stipulated that the pallets and skids were used in the transportation of appellant's products to its customers and were non-returnable. The finished product of the appellant consists of rolls of paper weighing between one-half ton and several tons. In preparation of the product for shipment to appellant's customers, the rolls are placed on the skids or pallets and are then secured to the pallets by metal bands which surround the unit.

Section 203 (j) of the act, originally section 203 (i), provides that the use of "wrapping paper, wrapping twine, bags, cartons, tape, rope, labels, non-returnable containers and all other wrapping supplies, when such use is incidental to the delivery of any personal property" shall be excluded from tax.

It is true, as the Commonwealth argues, that departmental ruling 202, which was issued in January 1957, indicated that tax was due on the purchase of skids and pallets used in conjunction with the transportation of manufactured products, and this included the metal bands used to attach the product to the pallet. However, ruling no. 245 (a), issued May 23, 1958, effective April 5, 1957, provided that the purchase or use by a manufacturer of packaging and wrapping supplies, materials and containers, returnable and nonreturnable, which are physically transferred to another in conjunction with the delivery of the product produced, are exempt. And the Sales Tax Board on several occasions has found the sale of certain types of skids or pallets, or certain uses thereof, tax exempt. See 3 CCH 1961 State Tax Rep., Paragraphs 250-072, -076, -563. In this last State Tax Board ruling, it seems the facts were on all fours with the instant case. There, the manufacturer made munition shells and delivered its finished product to the ultimate consumer by placing

the base of the shell upon a wooden frame into which were cut depressions to fit and keep the base secure. Over the nose of the shell was placed another wooden frame into which were cut openings to fit and keep the nose secure. The container was thereafter further secured by metal bands wrapped around the entire unit. It was held that the "pallets" were excluded from tax as a nonreturnable container.

"While we are not bound by such rules and regulations, nevertheless, we may consider them in ascertaining the intent of the legislature. Act of May 28, 1937, P. L. 1019, art. IV, §51, 46 PS §551. As was said in Loeb Estate, 400 Pa. 368, 373 (1960):

" 'Where the language of a statute is plain and clear, administrative interpretations and practice cannot change or avoid the statute. Where, however, the words of a statute are not clear or explicit the contemporaneous construction of a statute by those charged with its execution and application, especially when it has long prevailed, is entitled to great weight and should not be disregarded or overturned except for clear language in the Act itself or very strong cogent and convincing reasons' " (Citing cases.) : Commonwealth v. Equitable Gas Co., supra.

Under the latest interpretation of the administrative body, and, indeed, as we interpret section 203(j), the use of the pallets in the instant case are exempt and, of course, the use of the nails and lumber from which they were made are likewise exempt: 3 CCH 1961 State Tax Rep., paragraph 250-562.

There appears to us to be no real problem with the taxability on the lease of trucks and cranes. The transaction is taxable to the lessee. It is clear that section 201(b)[2] of the act imposes the tax on the lessee, and

---

[2] "(b) There is hereby imposed upon the use within this Commonwealth of tangible personal property purchased at retail on or after March 7, 1956, a tax . . . which tax shall be paid to the Com-

the fact that the Commonwealth has failed to seek the tax from the lessor who, in the first instance, should have collected it from the lessee, cannot aid the lessee here.

It is quite possible that the rental of the cranes, the air compressor and the use of the Diesel engine treatment, a lubricant, the latter two items having been lumped together as a miscellaneous category, might be exempt if their use had been adequately explained, but, having fallen down here, appellant must be held to have failed to here meet his burden.

### Conclusions of Law

1. The Commonwealth has not shown that the appeal was not timely taken, and the motion to quash should be dismissed.

2. The use of A-Gel, Remox and Du-Jet by appellant herein for the taxable period March 7, 1956, to and including May 31, 1959, is not subject to the Selective Sales and Use Tax, and the tax previously paid thereon should be refunded.

3. The use by appellant, from March 7, 1956, to and including May 31, 1959, of skids and pallets and, consequently, the use of the nails and lumber from which they were made, is not subject to the Selective Sales and Use Tax, and the tax previously paid thereon should be refunded.

4. The rental by appellant of trucks and cranes during the taxable period is subject to the tax imposed by the Selective Sales and Use Tax and should here be paid by appellant.

5. The tax imposed for the period March 7, 1956, to and including May 31, 1959, on miscellaneous items

---

monwealth by the person who uses such property as herein provided, except that such tax shall not be paid by such person where he has paid the tax imposed by subsection (a) of this section with respect to such property" (tax imposed on the sale of personal property): Act of May 24, 1956, P. L. 1707, art. II sec. 201(b).

not properly itemized or explained should be paid by appellant.

We accordingly enter the following

*Order*

And now, November 4, 1963, it is ordered, adjudged and decreed that the Commonwealth's motion to quash the appeal is dismissed.

The appeal of Yorktowne Paper Mills, Inc., is sustained insofar as it relates to the refund of tax on the use of A-Gel, Remox, Du-Jet and of lumber and nails and the skids and pallets made therefrom, and the Department of Revenue shall refund the sum of $852.36 tax and interest and penalties paid thereon; the said appeal is dismissed insofar as it relates to the refund of tax on truck and crane rentals and miscellaneous items, and judgment shall be entered in favor of the Commonwealth and against Yorktowne Paper Mills, Inc., in the amount of $475.95, plus additions and interest according to law, all of which, having been paid, shall be marked satisfied.

Either party may file exceptions within 30 days.